```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

    - v. -                                  :    10 Cr. 398 (JGK)

GLADSTON ROBB,                              :
   a/k/a "Gladstone Robb,"
                                            :
                Defendant.
                                            :
- - - - - - - - - - - - - - - - - - - - - - x
```

THE GOVERNMENT'S SENTENCING SUBMISSION

                                    PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York
                                    One St. Andrew's Plaza
                                    New York, New York 10007



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 25, 2011

**BY HAND**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Gladston Robb, 10 Cr. 398 (JGK)**

Dear Judge Koeltl:

      The defendant is scheduled to be sentenced in the above-referenced case on April 1, 2011 at 11:30 a.m. The Government respectfully submits this letter in advance of the sentencing, and in response to defense counsel's sentencing submission, dated February 18, 2011. The Government respectfully requests that the Court impose a sentence within the Guidelines range stipulated to by the parties, which is 15 to 21 months' imprisonment. Such a sentence would be sufficient but not greater than necessary to serve the purposes of sentencing, as it would reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct.[1]

## BACKGROUND

**A.**    **The Indictment and The Offense Conduct**

      The Indictment charges the defendant with violating 42 U.S.C. Section 408(a)(7)(B) by falsely representing a number to be the social security account number assigned by the Commissioner of Social Security to the defendant, when in fact such number was not the social security account number assigned to him, to wit the defendant used a social security

---

[1] As explained below, the Probation Department accurately calculated a higher Guidelines range of 21 to 27 months' imprisonment. Under the plea agreement, the Government is bound to accept the stipulated range as the Guidelines range, but is free to argue for a sentence above the stipulated range under 18 U.S.C. Section 3553.

account number assigned to another person to apply for a New York State learner's permit under that person's identity.

The Indictment was brought as part of an investigation of Wilch Dewalt and others, including an employee of the New York State Department of Motor Vehicles ("DMV"). For a fee, Dewalt helped individuals obtain from the DMV New York State identification documents in other people's identities, and the defendant was one of Dewalt's customers. (Presentence Investigation Report ("PSR") ¶¶ 7, 10, 11.) On or about May 3, 2007, the defendant submitted to the DMV an application for a New York State learner's permit under someone else's name and social security account number. (Id. ¶ 9.) The photograph taken in connection with the application is of the defendant, and not of the person whose identity was used. (Id. ¶ 11.)

On July 26, 2010, the defendant pleaded guilty pursuant to a plea agreement to the sole count of the Indictment.

**B.     The Defendant's Criminal History**



**C.     The Presentence Investigation Report and Guidelines Calculation**

The United States Probation Office (the "Probation Office") calculated a total offense level of 10, (PSR ¶ 28), and a Criminal History Category of V, (PSR ¶ 44), resulting in a Guidelines range of 21 to 27 months' imprisonment, (PSR ¶ 106). The plea agreement calculated an offense level of 10, and a Criminal History Category of IV. The plea agreement and the PSR both calculate nine criminal history points for the defendant's prior convictions. The PSR also correctly added two criminal history points, because, at the time of the instant offense conduct in May 2007, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (PSR ¶ 43.)

2

## DISCUSSION

### A.   Applicable Law

The United States Sentencing Guidelines still provide strong guidance to the Court following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Although Booker held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. Booker, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (ii) the four legitimate purposes of sentencing (which are described below), see id. § 3553(a)(2); (iii) "the kinds of sentences available," id. § 3553(a)(3); (iv) the Guidelines range itself, see id. § 3553(a)(4); (v) any relevant policy statement by the Sentencing Commission, see id. § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," id. § 3553(a)(6); and (vii) "the need to provide restitution to any victims," id. § 3553(a)(7). See Gall, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.   A Guidelines Range Sentence Is Appropriate

The defendant's submission principally discusses the following issues concerning the nature and circumstances of the offense and the history and characteristics of the defendant:

3

███████████████████████████████ (iii) the defendant suffered significant injuries as a result of a motor vehicle accident that occurred while he was being transported in a van operated by the United States Marshals Service as it was attempting to exit the courthouse to transport inmates to the Metropolitan Detention Center; and (iv) the defendant was only a customer and not an organizer of the scheme to distribute the permit that he received in connection with the instant offense.[2]

███████████████████████████████

The Government also acknowledges that the defendant suffered injuries while being transported by the Marshals. However, the defense's submission fails to account for the defendant's extensive criminal history, ███████████████████████████████ Further, while the defendant may not have organized the scheme to steal other's identities, it is quite serious for him to use another's identity. The seriousness is underscored by the fact that the defendant appears to have used at least three identities. In connection with the instant offense, he used the identity of ███████ (PSR ¶ 14.) ███████████████████████████████ He also told the Probation Office that he fraudulently used a social security number in connection with false identity documents provided to him by a family member. (PSR ¶ 103.)

       The defense submission also notes that, while the defendant has been detained during the course of the instant case, he has been serving his sentence for his 2009 illegal reentry conviction. As a result, the defendant's sentence for the instant offense would not typically have any time deducted based upon the time he has spent in custody to date. Relying upon United States v. Los Santos, 283 F.3d 422 (2d Cir. 2002), the defense argues that the defendant should be credited for the approximately eleven months that he has been in custody in New York. The defense appears to concede that its argument relies upon an interpretation of Los Santos that would require an "evolution of the law."

           In Los Santos, the Second Circuit vacated and remanded a district court's pre-Booker downward departure that was intended to account for the defendant's "loss of opportunity to serve concurrent sentences . . . due to the government's delay in instituting

---

        [2]The defendant's sentencing submission states that the defense does not believe that other customers have been prosecuted. Approximately twenty-five of Dewalt's customers have been charged in federal and state court.

prosecution." Los Santos, 283 F.3d at 424.³ The Second Circuit set forth two possible bases for when a district court may depart under U.S.S.G. § 5K2.0 "based on a prosecutorial delay that resulted in a missed opportunity for concurrent sentencing:" (i) the delay must have been due to bad faith by the prosecution or (ii) the delay must not have been "longer than a reasonable amount of time for the government to have diligently investigated the crime involved such that the delay takes the case out of the heartland." Los Santos, 283 F.3d at 428. Here, the defense seeks to find delay by attempting to place upon the Southern District of Texas an obligation to notify law enforcement officials in New York about Mr. Robb's fraudulent driver's license. There was no delay. The Southern District of Texas simply decided not to take action on a crime for which it did not have venue. In contrast, in Los Santos, an illegal alien-defendant was in state custody, and the federal prosecuting office that later prosecuted him for illegal reentry apparently was on notice that he was in state custody and that he likely was an illegal alien. The Second Circuit found that the government's taking the defendant into custody on the day he was due to be released from state custody "at least raise[d] the suspicion of bad motive on the part of the government." Id.⁴

In sum, the Government respectfully submits that, since the defendant committed two separate offenses – illegal reentry in Texas and use of another's social security number in New York – he should receive separate punishments for each offense, and that an appropriate and just sentence would be one within the parties' stipulated Guidelines range of 15 to 21 months' imprisonment.

---

³While the decision in Los Santos involved a departure under the Guidelines, it appears that the defendant – who is precluded under the plea agreement from seeking a departure – is making an argument under Section 3553(a).

⁴The Government agrees with the Government's position in Los Santos that any delay within the applicable statute of limitations is presumptively legitimate and within the Government's prosecutorial discretion. Id. at 428 (the Second Circuit noted that it "previously recognized that 'ordinary accidents of acceleration or delay are simply part of the criminal process, in contrast to 'extreme' or 'sinister' delays concocted to increase a sentence.") (quoting United States v. Acevedo, 229 F. 3d 350, 356 (2d Cir. 2000) (quotation omitted)).

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant within the stipulated Guidelines range of 15 to 21 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Alvin Bragg
Assistant United States Attorney
Tel.: (212) 637-1085

cc:     Donald D. duBoulay, Esq. (By Fax)